UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED PROCTOR,

        Plaintiff,

v.

M. FOUNTAIN, *et al.*,

        Defendants.
_____/

Case No. 1:23-cv-38

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

Fred Proctor ("Proctor"), through counsel, has filed this civil rights action pursuant to 42 U.S.C. § 1983. Proctor is prisoner in the custody of the Michigan Department of Corrections (MDOC). This lawsuit involves the rejection of a piece of mail at the MDOC's Carson City Correctional Facility (DRF).

In his amended complaint[1], Proctor sued the following DRF employees: Corrections Officer (CO) Kerry Fountain (named as "M. Fountain, believed to be 'Mary Fountain'"); Prison Counselor (PC) Michael Schafer; Warden Randee Rewerts; Resident Unit Manager (RUM) Leon Ward; Inspector Ryan Bowne (named as "Assistant Deputy Warden at DRF"); and, mailroom staff Karagan Kavanaugh (named as "Unknown Kavanaugh, believed to be 'Kimberly Kavanaugh' . . . the DRF Mailroom Supervisor" and also referred to as "Defendant Kavangh" and "Defendant Kavanagh"). Amend. Compl. (ECF No. 10, PageID.174-175). Proctor's complaint also sued MDOC Office of Legal Affairs Grievance Section Manager Richard Russell and MDOC Deputy Director Jeremy Bush (named as the "director of Michigan's

---

[1] Proctor previously filed a complaint (ECF No. 1) and a corrected complaint (ECF No. 5).

1

Correctional Facilities Administration ('CFA')"). *Id*. at PageID.175. Finally, Proctor's complaint sued "Jane and John Does 1-5" who are unknown "persons working at the CFA". *Id*. Proctor also alleged that, "[a]ll Defendants are sued in their individual capacities for monetary relief only and in their official capacities for injunctive and declaratory relief under the *Ex Parte Young* doctrine." *Id*. This matter is now before the Court on defendants' motion for partial summary judgment on the basis of exhaustion (ECF No. 15).

I.  **Proctor's allegations**

This lawsuit arose from DRF staff's rejection of a law journal article by Professor Kimberly Thomas identified as *Voices from a Prison Pandemic: Lives Lost from COVID-19 at Lakeland Correctional*, 19(1) Oh. State. J. Crim. L. 157 (2021) (the "Article"). Amend. Compl. at PageID.176-177; Article (ECF No. 5-1, PageID.98).[2] Proctor was one of the DRF prisoners interviewed for the Article. Amend. Compl. at PageID.177. "After Professor Thomas published the Article, she had two or three copies sent to each of the incarcerated persons interviewed for the Article, including Plaintiff, from the Ohio State Journal of Criminal Law." *Id*. (footnote omitted).

CO Fountain rejected the Article when it arrived at DRF on March 24, 2022. *Id*.; *See* Rejection (ECF No. 5-2, PageID.116). Proctor requested an administrative hearing to contest the rejection. Amend. Compl. at PageID.178. The hearing officer, PC Schafer, denied Proctor relief and the Article was held pending the outcome of a grievance. Hearing Report (April 18, 2022) (ECF No. 5-3, PageID.118). The Hearing Report noted that "[t]he item was not available at the hearing." *Id*.

---

[2] The amended complaint does not state whether the referenced exhibits are from the original complaint (ECF No. 1) or the corrected complaint (ECF No. 5). For purposes of this report, the undersigned assumes that Proctor's counsel is referring to the exhibits attached to the corrected complaint.

2

About three weeks later, on May 11, 2022, Proctor sent mailroom staff Kavanaugh "a letter informing her that all the other persons quoted in the Article were provided with their copies and inquiring why he was being given disparate treatment." Amend. Comp. at PageID.183; Letter (ECF No. 5-5, PageID.137). Kavanaugh responded advising Proctor that "the Mail Rejection in question was forwarded to CFA for determination." Amend. Compl. at PageID.183. Proctor alleged that either defendants Bush and/or Jane and John Does 1–5 "did not receive and/or read the Article and once again rubber stamped the decision of the other Defendants in this case" or "read the Article and approved the unconstitutional rejection of the Article." *Id*. at PageID.184. Proctor went on to allege that "[i]t is therefore unclear whether Defendant Kavanagh, Defendant Rewerts, or some other Defendant sought to have the Ohio Journal of Criminal Law placed on the banned publications list." *Id*. at PageID.185.

Proctor summarized the actions of the defendants (other than Kavanaugh, Bush and the Doe defendants) as follows:

> 65. However, upon information and belief, only one of the Defendants ever saw the Article.
>
> 66. Specifically, Defendant Fountain saw the Article when she initially rejected it.
>
> 67. It is unclear to what extent, if any, Defendant Fountain actually read the Article.
>
> 68. Defendant Schafer did not see the Article because it was not present at the hearing Mr. Proctor requested.
>
> 69. Rather, Defendant Schafer simply adopted the Defendant Fountain's allegations without conducting any type of independent review.
>
> 70. Defendants Ward, Bowne, Rewerts, and Russell merely parroted the decision of Defendant Schafer in their denials of Mr. Proctor's Grievance. Exhibit F, Step I-III Grievances and Responses.

> 71. Defendant Richard Russell simply affirmed the decision of Defendant R. Rewerts without addressing any of the issues raised by Mr. Proctor.
>
> 72. Defendants Rewerts and Richard Russell maintain a custom or policy of rubber-stamping Step I and Step II grievance denials or rejections.

*Id*. at PageID.186 (emphasis omitted).

Proctor alleged three counts.

**COUNT I: 42 U.S.C. § 1983 - First Amendment**.  In this count, Proctor alleged that defendants' rejection of the Article violated his right to receive information as guaranteed by the First Amendment.  Compl. at PageID.188-190.

**COUNT II: 42 U.S.C. § 1983 - Fourteenth Amendment Procedural Due Process**.  In this count, Proctor alleged that defendants failed to provide him with procedural due process after defendant Fountain denied his mail.  *Id*. at PageID.190-193.  The Court construes this Count as alleged against all defendants except for defendant Fountain.

**COUNT III: 42 U.S.C. § 1983 - Fourteenth Amendment - Void for Vagueness**.  In this count, Proctor alleged that as applied in this case, MDOC Policy Directive 05.03.118 (Prisoner Mail) "is unconstitutionally vague because it permits arbitrary and discriminatory rejections of mail based on some vague claim that the mail may be used to 'communicate with or influence' other incarcerated persons."  *Id*. at PageID.193-194.

For his relief, Proctor seeks damages, declaratory relief, injunctive relief, and attorney fees.  *Id*. at PageID.194-196.

> II.   **Proctor has failed to allege § 1983 claims against defendants Ward, Bowne, Rewerts and Russell, the reviewers and respondents to his grievance filed against defendants Fountain and Schafer.**

Proctor seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the

4

Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived her of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Title 42 U.S.C. § 1997e(c)(1) provides that:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

"District courts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is *pro se*, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

As discussed in § III, *infra.*, defendants seek summary judgment for lack of exhaustion as to Proctor's relevant grievance, DRF-22-04-0947-7a ("947") (ECF No. 15-3, PageID.266-283), which was directed at defendants Fountain, Schafer, and arguably Kavanaugh for the rejection of Proctor's mail (the Article) on March 24, 2022 and April 18, 2022.

Proctor did not grieve defendants Ward, Bowne, Rewerts and Russell for rejecting his mail. Rather, these four individuals reviewed and responded to Grievance 947 which Proctor filed against those defendants who rejected the mail on March 24, 2022 and April 18, 2022. Respondent Ward and Reviewer Bowne denied Proctor's grievance at Step I. PageID.270-271. Warden Rewerts reviewed and denied Proctor's Step II appeal. PageID.267-269. Finally, Richard Russell reviewed and denied Proctor's appeal to Step III. PageID.266-268.

A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). Accordingly, defendants Ward, Bowne, Rewerts and Russell should be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1).

### III.     Defendants' Motion for summary judgment

#### A.     Legal standard

Defendants moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

6

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.   Lack of Exhaustion

#### 1.   Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

7

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response,

8

or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendants identified six grievances which Proctor pursued through Step III at DRF since CO Fountain rejected the Article in March 2022. *See* Defendants' Brief (ECF No. 15, PageID.222-223); MDOC Prisoner Step III Grievance Report and Exhibits (ECF No. 15-3, PageID.244-302). The only grievance which appears relevant to Proctor's complaint is Grievance 947 (ECF No. 15-3, PageID.266-283).

Grievance 947 lists an incident date of April 18, 2022 (the administrative hearing before PC Schafer). Grievance 947 also refers to the March 24, 2022 rejection of the Article by "M. Fountain" and states in pertinent part that

> PC Schafer as his custom, and practice, simply aligned himself with mail room staff member Fountain and simply adopted Fountain's language to deprive me of this Journal, without conducting any investigation into the rejection what so ever!

Grievance 947 at PageID.270, 272. As discussed, defendants Ward and Reviewer Bowne denied the grievance at Step I, Warden Rewerts denied the Step II appeal, and Russell denied the Step III appeal. *Id*. at PageID.266-271.

Grievance 947 identifies CO Fountain and PC Schafer for acts which allegedly occurred on March 24, 2022 (Fountain improperly rejected the Article) and April 18, 2022 (PC Schafer improperly upheld the rejection without performing an investigation). This grievance corresponds with Proctor's Count I (defendants Fountain and Schafer deprived Proctor of mail on those dates) and Count II (defendant Schafer's conduct of the hearing and decision violated due process)[3]. Based on this record, the Court concludes that Grievance 947 properly exhausted

---

[3] In reaching this determination, the Court notes that the due process violations alleged in Count II occurred after Fountain denied the mail. *See* Amend. Compl. at ¶ 100 (PageID.191) ("While Mr. Proctor was granted a hearing and

Proctor's claim against defendants Fountain and Schafer as to Count I and properly exhausted Proctor's claim against defendant Schafer in Count II.

In addition, defendant Kavanaugh is mentioned in the grievance. Specifically, in response to the question "[w]hat attempt did you make to resolve this issue prior to writing this grievance", Proctor responded that on April 18, 2022,

> Spoke directly to PC Schafer and also sent a kite to DRF Mail Room supervisor Kavanagh. Matter could not be resolved at this level. See below.

Grievance 91 at PageID.270. Proctor's attempt to resolve the issue with defendant Kavanaugh indicates that she is among the staff members being grieved. *See* Policy Directive 03.02.130 ¶ Q stating in pertinent part ("Prior to submitting a written grievance, the grievant shall attempt to resolve the issue *with the staff member involved* within two business days after becoming aware of a grievable issue") (emphasis added). Based on this record, a genuine issue of material fact exists as to whether Kavanaugh was identified as a party being grieved.[4] Accordingly, defendants' motion should be denied as to defendant Kavanaugh with respect to the claims raised in Counts I and II.

Next, Grievance 947 does not address Proctor's claim raised in Count III, *i.e.*, that Policy Directive 05.03.118 is unconstitutionally vague. Proctor's grievance referenced Policy Directive 05.03.118 ¶¶ NN and OO (PageID.270). Paragraph NN states that "Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the

---

an opportunity to appeal Defendant Fountain's decision to reject the Article, that process was nothing more than a rubber stamp of the original decision and therefore does not amount to a meaningful opportunity to be heard.").

[4] In reaching this determination, the Court notes that this claim involves defendant Kavanaugh's conduct on or before April 18, 2022; it does not involve Proctor's allegation that he sent defendant Kavanaugh a letter on May 11, 2022 that "he was given disparate treatment." *See* Amend. Compl. at PageID.183.

10

prisoner." ¶ NN (ECF No. 22-1, PageID.338) (also listing 23 types of mail which "pose such risks under all circumstances and therefore shall be rejected"). *Id*. at PageID.338-340.  Paragraph OO provides that "Mail which prevents an effective search may provide a means of introducing controlled substances, for example Suboxone or Fentanyl, or other contraband which poses a threat to the security, good order, or discipline of the facility." ¶ OO (ECF No. 22-1, PageID.340).  While Proctor referred to these paragraphs, his grievance did not claim that Policy Directive 05.03.118 was unconstitutional as applied to him.[5]  Rather, Proctor's grievance claimed that defendants Fountain and Schafer improperly rejected the Article based on their personal prejudices and opinions.  *See* Grievance 947 at PageID.272 ("Fountain and Schafter [sic] reasons for denying this law journal is simply based on personal prejudice, personal opinions and are irrational and arbitary [sic] and conclusory reasons").  For these reasons, Proctor failed to properly exhaust Count III against any defendants.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, defendants should be granted summary judgment as to Count III.

Finally Grievance 947 does not name defendants Ward, Bowne, Rewerts, Russell, and Bush as required by the policy directive.  *See* Policy Directive 03.02.130 ¶ S ("Dates, times, places and names of all those involved in the issue being grieved are to be included.").  There is no evidence that Proctor filed a later grievance naming these individuals.  For this reason, Proctor

---

[5] The Court notes that Proctor could file a grievance regarding the content of the policy or procedure as it was applied to him.  *See* Policy Directive 03.02.130 ¶ J.8.:

> Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if: . . . . 8. The prisoner is grieving <u>content</u> of the policy or procedure except as it was specifically applied to the grievant. If a prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.105 "Prisoner Housing Unit Representatives / Warden's Forum."

*See Lopp v. Washington*, No. 1:19-cv-540, 2021 WL 3033266 at *1 (W.D. Mich. July 19, 2021) ("The Warden's Forum may be a venue to properly exhaust claims that challenge a prison policy or procedure as a whole, but the Warden's Forum is not an appropriate place to argue that a specific prisoner's constitutional rights were violated.").

failed to properly exhaust his claim against these defendants. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, defendants' motion for summary judgment should be granted as to defendants Ward, Bowne, Rewerts, Russell, and Bush.[6]

### IV. Recommendation

For these reasons, I respectfully recommend that defendants Ward, Bowne, Rewerts, and Russell be **DISMISSED** for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1).  In the alternative, I recommend that defendants' motion for summary judgment (ECF No. 14) be **GRANTED** as to defendants Ward, Bowne, Rewerts, and Russell and that they be **DISMISSED** on that basis.

I further recommend that defendants' motion for summary judgment (ECF No. 14) be **GRANTED** as to defendant Bush and that he be **DISMISSED** from this action.

I further recommend that defendants' motion for summary judgment be **GRANTED** as to all defendants with respect to Count III.

I further recommend that defendants' motion for summary judgment (ECF No. 14) be **DENIED** as to defendant Kavanaugh with respect to Counts I and II.

Based on this recommendation, the remaining claims in this case are Count I (First Amendment claim against defendants Fountain, Schafer and Kavanaugh) and Count II (Fourteenth Amendment Procedural Due Process claim against defendants Schafer and Kavanaugh).

Dated: January 24, 2024                               /s/ Ray Kent
                                                      Ray Kent
                                                      United States Magistrate Judge

---

[6] The Court notes that this recommendation regarding defendants Ward, Bowne, Rewerts, and Russell is in the alternative to the basis set forth in § II, *supra*.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).